GUILFORD TRUST COMPANY, TR., ET AL. IN EQ.
*vs.*
ALEXANDER A. LAFLEUR
INHABITANTS OF THE TOWN OF GUILFORD,
PISCATAQUIS COMMUNITY SCHOOL DISTRICT
AND IVA A. MAGINNIS, ET AL.

Piscataquis.   Opinion, August 6, 1952.

*Alexander A. LaFleur,* for Town of Guilford.

*Frederick J. Laughlin and S. Arthur Paul,*
for defendant Maginnis.

*Perkins, Weeks and Hutchins,*
*Alvin W. Perkins,*
for Inhabitants of Guilford and School District.

*Lester A. Olson,* Guardian *ad litem.*
*C. W. and H. M. Hayes,* Guilford Trust Company.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.   On appeal.   This is a bill in equity by the Guilford Trust Company, Trustee under the will of William Appleyard, and Raymond W. Davis, given certain duties under the will, for construction of the will and advice and instruction in the administration of a trust.   The defendants are Alexander A. LaFleur, as he is attorney general of the State of Maine, the Town of Guilford, the Piscataquis Community School District, Iva A. Maginnis, daughter and sole heir at law of the testator, and persons unknown represented by a guardian *ad litem*.

William Appleyard, late of Guilford, died testate on March 19, 1950 leaving a will duly probated in the County of Piscataquis.   His will was dated November 30, 1936.   The residue of the estate amounting to approximately $20,000 was left in trust with the plaintiff, Guilford Trust Company, under the third clause of the will as follows:

> "THIRD:   All the rest, residue and remainder of my property, real, personal and mixed, wherever situated and however and whenever acquired, I give, bequeath and devise unto the Guilford Trust Company, a corporation organized under the Laws of Maine and having its established place of business in Guilford in said Piscataquis County, in trust, however, for the sole benefit of the Guilford High School in the said Town of Guilford.   This trust shall be known as 'The William and Addie A. Sampson Appleyard Guilford High School Memorial Trust Fund'.   Addie Adams Sampson Appleyard, now deceased, was my wife.   The Trustee may receive its appointment without bond.
>
> "A large portion of this trust estate is now in real estate.   Authority is hereby given to said Trustee to sell said real estate, or any portion of it, and convert the same into cash at any time

when it deems it advisable so to do. The said Trustee shall use so much of the yearly income from said trust estate, before or after the sale of said real estate, as shall be available for the exclusive benefit of the said Guilford High School, insofar as it teaches all subjects except religion. I do not attempt to particularize the way in which this income shall be expended. That I leave to the judgment of those who lawfully have in charge the direction and management of the Guilford High School, as now the School Committee; but I do direct that so long as Raymond W. Davis, the Executor of this Will, in whom I have implicit confidence, lives, he shall have full right to act with said School Committee or governing body in determining the particular use to which this annual income shall be expended for said High School. I do express this desire, however, that this income shall not be made use of to the end that it shall save the Town something by way of taxes. I desire the effect of this trust to be a help to the High School in addition to that which would naturally and probably be afforded by the Town were this trust not created. I trust that the School Committee or governing body will be inclined to accept the judgment of Mr. Davis as to the specific use of this income, for, because of my contacts with him, he understands more than anyone else how I feel about this matter.

"Some particular uses which have occurred to me are these, and I do not name them in the order of their importance or desirability:

"1. Income in whole or in part to be used to establish a chair on some subject in the High School to give proper instruction in some branch not in the curriculum or, if there, not adequately taught.

"2. Income in whole or in part to be used for special instruction in public speaking, debating, or composition of articles on public questions.

"3. Income in whole or in part to be used to establish and maintain a chair in said High School in one or more of the following subjects: Philosophy, business law, elementary forestry.

"Still, I say again, while the general use of the income must be solely for the benefit of said High School, the particular use is finally to be determined by the School Committee or governing body of the High School, with the assistance of Mr. Davis, as heretofore stated, whom I regard as my personal representative."

In the findings and conclusions by the sitting justice is the following statement:

"For years the town of Guilford, Maine has owned a brick building in the town, and maintained a school therein known as the Guilford High School. The management and control of this high school has formerly been in the hands of a legal town school committee subject to the usual statutory state supervision.

"On June 20, 1949 a school district comprising the towns of Guilford, Sangerville, Abbott and Parkman, all in the county of Piscataquis, was duly organized according to the provisions of Section 92-A of Chapter 37 of the Revised Statutes of Maine (1944) as amended by Chapter 357 of the Public Laws of 1947 and by Chapter 249 of the Public Laws of 1949, which district is designated and known as the Piscataquis Community School District.

"On June 8, 1949 the town of Guilford executed a lease of its high school building to the Piscataquis Community School District, and after the legal organization of the District had been completed, the possession of the building was delivered to the Trustees of the District and accepted by them. The Guilford High School building has since that time been under the control of the twelve Trustees of the District (three from each town). The cur-

riculum and other matters pertaining to education of scholars are under the control of the School Committee of seven—(three from Guilford, two from Sangerville, one from Abbott, and one from Parkman),—subject, of course, to the usual statutory state supervision.

"Since September 1949 the District has been maintaining a school in the said school building which is attended by children from all of the four towns in the District. The grades that now occupy the building are the same designated grades that occupied the building prior to September 1949 when the school was managed by the Guilford School Committee. It is also a fact that some, if not all the towns now in the District, have for years been sending pupils to the Guilford High School and have paid tuition to Guilford under provisions of Revised Statutes, Chapter 37, Section 98.

"In all the aforenamed bills in equity, except the case involving the Appleyard will, Guilford High School (under the name of 'Guilford High School') existed at the time of the testator's death. In the Appleyard case it was stipulated that the testator died March 19, 1950, and knew in his lifetime of the formation of the Piscataquis Community School District in June 1949, and knew of the possession and control by the District thereafter, although Appleyard made no changes in or additions to his will. The Appleyard will was executed November 30, 1936."

The findings and conclusions cover not only the case at bar but also three other cases relating to the Guilford High School as is indicated in the quotation above. In each case the sitting justice concluded that the cy pres doctrine was applicable.

The sitting justice entered a decree in which he set forth in substance: (1) that the trust was a "general, public, charitable trust"; (2) that the said "District is now the of-

ficial secondary school of said towns, and is, in fact and law, the high school of and for said town of Guilford"; and (3) that the funds "became vested in the plaintiff Guilford Trust Company as trustee, and all rights of his heirs at law became divested." There is also provision in the decree for the management of the fund and in particular the decree reads:

"6. In accordance with the apparent general purpose of the testator, and in order to carry out his intent as nearly as may be,

"A. Said trust and the income thereof shall be administered according to the provisions of said will for the benefit of Guilford boys and girls, present and future, who desire a high school education, through the facilities of Piscataquis Community School.

"B. The trust will continue to be known as 'The William and Addie A. Sampson Appleyard Guilford High School Memorial Trust Fund', authority in the manner of expending the income of said fund, according to the provisions of said will shall be in the Piscataquis Community School Committee, with such advice from the plaintiff Raymond W. Davis as is therein suggested, and upon such authority, the trustee may if it deems it proper, make disbursements direct to Piscataquis Community School District."

The defendant, Iva A. Maginnis, who alone appeals from the decree below, made six requests for rulings of law which were refused. The requests were as follows: (1) that by reason of the Guilford High School ceasing to exist before the death of the testator, the trust for benefit of Guilford High School lapsed and the remainder vested in the sole surviving heir; (2) that the residue and remainder cannot be applied cy pres; (3) that the intended bequest was a specific and restricted charitable bequest and not a general public charitable bequest for general educational purposes

and could not have been applied cy pres for the benefit of any public educational charity other than the Guilford High School; (4) that since the testator's death there has been no change by which the doctrine of cy pres can be applied; (5) that the court find as a matter of law that at the date of Mr. Appleyard's death that Guilford High School was not an existing entity and the grade school at that time was under the control and an integral part of the Piscataquis Community School District for benefit of scholars in four different towns including Guilford; (6) that there be appropriate instruction to the Probate Court to the end that the defendant, Iva A. Maginnis, obtain the residue of the estate.

The decision below was based on two grounds: 1st, the application of cy pres; and 2nd, that the present high school is the Guilford High School, or in other words that there had been no change in beneficiary or trustee.

In our view it is unnecessary that we consider the cy pres doctrine in deciding the issue. An interesting argument in favor of its application may be made. We prefer, however, to place our decision on the second ground. For illustrative cases on the cy pres doctrine see *Bancroft* v. *Sanatorium Ass'n.*, 119 Me. 56, 109 A. 585; *Snow and Clifford* v. *Bowdoin College,* 133 Me. 195, 175 A. 268; *Manuf'rs National Bank et al.* v. *Woodward,* 141 Me. 28, 38 A. (2nd) 657; and *First Universalist Society of Bath* v. *Swett* (July 1952).

The argument of the heir comes to this and no more; that because the town of Guilford has entered a community school district and not alone but with three towns maintains a high school, therefore a gift for benefit of the high school scholars of Guilford must be lost. The same young men and women who, if they were attending the Guilford High School would be benefited by this gift must, says the heir, lose it because they now attend the high school of the Piscataquis Community School District.

The statute reads:

"Community schools as herein provided when established may be considered the official secondary schools of the participating towns and all provisions of the general law relating to public education shall apply to said schools."

*R. S. Ch. 37, Sec. 92-H, enacted P. L. 1947, Ch. 357 as amended by P. L. 1949, Ch. 249.*

In this section of the statute we find the answer to the problem. Guilford High School we may well assume was the official secondary school of Guilford. The community school is now the official secondary school of Guilford. It is this school which the taxpayers of Guilford support and it is this school that the children of Guilford have the right to attend.

From the facts we learn that students from at least two of the towns for several years have attended Guilford High School with the towns paying tuition for their instruction. The testator must be held to have had knowledge of the fact that scholars from outlying towns often attended high school in Guilford. Admittedly the testator had knowledge of the formation of the Piscataquis Community School District after he had drawn his will.

The intent of the testator to enlarge and broaden educational facilities for the youth of Guilford in a high school seems clear. He carefully provided that the income should not be used to relieve the town of its normal burden of expense for educational purposes.

We give no weight to the fact that the new high school is physically located in the buildings formerly occupied by the Guilford High School. There is nothing in the will of Mr. Appleyard to indicate that his gift was limited to an institution at a particular location. The point is that the

present high school, wherever located, is in fact and law the official secondary school of Guilford and it is this school, whatever its name, which the testator had in mind in naming the Guilford High School.

We need not on the narrow ground here urged by the heir deprive the testator of his right to give, or the youth of Guilford of their right to enjoy, the increased educational advantages made available through his generosity. To say that the gift must fail because of the change of name and the extension of the area supporting the school would, in our view, give undue weight to a relatively unimportant matter.

*Appeal dismissed.*

*Decree below affirmed with provision for payment of such further expenses and counsel fees as may be ordered by the sitting justice.*