RHODE ISLAND HOSPITAL TRUST COMPANY, *Tr. vs.*
JAMES JOHNSTON, *et al.*

AUGUST 18, 1953.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

116

CONDON, J. This is a bill in equity for the construction of the will of John Johnston, late of the city of Pawtucket, deceased, and for instructions to the trustee thereunder as to whom and in what proportion it shall distribute the trust property, the trust having terminated. When the cause was ready for hearing for final decree the superior court certified it to this court for our determination pursuant to general laws 1938, chapter 545, §7.

The testator died on October 21, 1942 leaving his wife Lilly H. Johnston surviving him. He had executed his will on September 2, 1937. Under the first thirty-one clauses thereof he made pecuniary bequests in specific amounts to numerous individual legatees and to several corporate legatees. In the thirty-second clause he bequeathed to his wife, provided she survived him, $200,000 and also certain parcels of real estate on High and Summit streets in Pawtucket together with household furniture and furnishings in the house on the latter street.

The residue of his estate he devised and bequeathed in the thirty-third clause, the construction of which is sought by the instant bill. That clause reads as follows:

"Thirty-third: The remainder of my property, both real and personal, wheresoever situated, of which I may die seized or to which I may be entitled at the time of my decease, I give, bequeath and devise to the Rhode Island Hospital Trust Company, of Providence, Rhode Island, in trust, to safely invest the same, and to pay the net income thereof in equal quarterly payments to my wife, Lilly H. Johnston, during the term of her natural life; and at the decease of my said wife, Lilly H. Johnston, to pay and distribute the balance of the principal of said trust fund, together with any accumulations thereto belonging, free of all trusts hereunder, as follows: one-quarter thereof to the Memorial Hospital of Pawtucket, and one-quarter to the Young Men's Christian Association of Pawtucket; the remaining two quarters to be divided amongst the personal legatees under this will and the charities and institutions herein

named as legatees, in proportion to the amount given such legatees and institutions."

Lilly H. Johnston died testate on February 18, 1950, thus terminating the trust made for her benefit "during the term of her natural life." Thereupon certain questions arose as to whom the trustee should "pay and distribute the balance of the principal of said trust fund, together with any accumulations thereto belonging * * *." Those questions have been set out in alphabetical order in paragraph numbered 16 of the bill. For convenience in our consideration of the points raised by the various respondent legatees we shall hereinafter quote each question only when it is reached for treatment.

Certain events that have occurred since the testator's decease, namely, the deaths of several of the legatees prior to the decease of Lilly H. Johnston and the nationalization of health service in Great Britain, have given rise to at least two of the questions. The other questions are not referable to any outside circumstances but are intrinsic in the language of the will itself. Three of such questions relate to what allocation shall be made of income due to come into the trustee's hands or actually in its hands, either by way of interest or dividends, after the death of Lilly H. Johnston. The remaining questions concern the rights of certain legatees to participate in the distribution of the trust fund and to what extent.

The complainant alleges in paragraph numbered 16 of its bill that it "is gravely in doubt as to the proper construction of the will" as applied to certain problems that have thus arisen concerning the distribution of the assets remaining in its hands as trustee. It further alleges that it cannot safely make distribution of such assets among the proper beneficiaries without first obtaining this court's construction of the will and instructions relative thereto. These problems are set out in said paragraph 16 in the form of ten specific questions.

The first question is as follows: "a. In the distribution of

the remaining two-fourths of the trust estate under the thirty-third clause of the will, should the estates of legatees, or next of kin of legatees who predeceased Lilly H. Johnston share in the distribution?" Under the first thirty-one clauses of the will the testator made thirty-nine pecuniary bequests to several charitable and religious institutions and to a large number of certain named persons most of whom were his and his wife's kin. The personal legacies were expressly conditioned upon each personal legatee surviving the testator. Some of such legatees, although they survived the testator and thereby became entitled to their legacies, predeceased the life tenant, thus raising the above-stated question whether their estates or their next of kin are entitled to share in the disposition of the remainder of the trust estate as personal legatees under the thirty-third clause.

The fundamental question is whether the gift over to the "personal legatees" vested immediately upon the death of the testator or was postponed until the expiration of the preceding life estate to Lilly H. Johnston. The contention is made that such gift is to the legatees as a class upon the decease of the life tenant and that, since those forming the class could be definitely known only when that event occurred, the gift did not vest until that time.

In view of the fact that those legatees were each specifically named in earlier clauses of the will and not otherwise ruled out by any controlling language therein, we cannot agree with the contention that the testator intended to treat them thereafter as a class under the thirty-third clause. Merely because he did not again name them in that clause but referred to them as "the personal legatees under this will" did not constitute them as a class. "The fact that they are all legatees under the same will, is not such a quality, characteristic or relation to the testator that they form a technical class." 3 Page on Wills (3d.) p. 203. This rule has been applied in the following cases and we think it is clearly applicable to the will in the instant case. *Wor-*

*cester Trust Co.* v. *Turner,* 210 Mass. 115; *Bronson* v. *Pinney,* 130 Conn. 262; *In re Hoffman's Will,* 201 N. Y. 247.

However, it is further argued that the testator's intention to postpone vesting is indicated by his direction to the trustee to pay over the balance of the trust fund after the decease of Lilly H. Johnston and divide the remaining two quarters thereof among the personal legatees. Such a direction, it is claimed, calls for the application of the so-called "divide and pay rule." That rule has been stated by this court in *Rogers* v. *Rogers,* 11 R. I. 38, at page 73, as follows: " * * * where the bequest is made in the form of a direction to pay or divide at a future time, the vesting will be postponed till then, for the reason that, inasmuch as the bequest consists in the direction to pay at a future time, it is in effect a bequest *at* that time, not an immediate bequest." But in that case, although the court said it appeared at first blush to fall within the rule, the rule was not applied because they found from a consideration of the whole will that the testator's intention was clearly to the contrary. In that connection they pointed out that the rule was "to be used simply as a key to the intention" and was not to be applied "to contravene the intention of the testator, when it is otherwise disclosed."

Limitations restricting the application of the rule have been stated in other cases. For example in *Staples* v. *D'Wolf,* 8 R. I. 74, 118, it was explicitly declared that whether the rule was to be applied was to be determined always by answering first the following questions: "is futurity annexed to the substance of the gift? if so, the vesting is postponed; or is it annexed to the time of payment only? if so, the legacy vests immediately." In that case two other rules of construction were also emphasized as tending to restrict the application of the divide and pay rule, namely, (1) the law favors vesting and where a gift is made to a person *in esse* it vests immediately; and (2) where the gift is of the residue it will be construed to so vest unless "a very clear intent" to postpone vesting is shown.

122

In the case at bar we find no such intent. From a reading of the whole will we are of the opinion that the testator merely intended to postpone the time of payment in order to benefit the life estate and that he did not intend to postpone the vesting of the gift in remainder. In other words, he annexed futurity not to the substance of the gift but solely to its enjoyment. For that reason and because such provision is a gift of the residue to the personal legatees as individuals and not as a class, the "divide and pay rule" has no application. Hence the answer to question 16 "a" is in the affirmative and the trustee is instructed to include in its distribution of the remaining two quarters of the trust estate the estates or next of kin of the personal legatees who survived the testator but predeceased Lilly H. Johnston.

The second question in paragraph 16 is: "b. in said distribution, should the Rhode Island Hospital Trust Company, as executor of the will of Lilly H. Johnston, share in the distribution?" The answer to that question lies in the answer to the question whether the testator intended to include his wife among those referred to by him in the thirty-third clause as "the personal legatees under this will." She is undoubtedly a legatee. Under the thirty-second clause she is given among other things the largest pecuniary legacy. Ordinarily this would be sufficient to warrant an affirmative answer to the above question, but here it is contended that because Lilly H. Johnston was given a life estate in the residue it was the intention of the testator to exclude her from sharing in the distribution of such residue. The fact that she had a life interest in the income of the trust estate, however, did not of itself necessarily preclude her from having a vested interest therein. *Barstow* v. *Young,* 68 R. I. 467. There is no incongruity in such a construction, nor is it uncommon for one having a life interest to be included among those to whom the remainder is given. *Starrett* v. *Botsford,* 64 R. I. 1. But where there are special circumstances indicating a contrary intention on the part of the testator the court will disregard the general

rule of law and give effect to such intention. *Rogers* v. *Rogers, supra.*

Almost all the respondents other than the executors of the will of Lilly H. Johnston have argued that such a contrary intention can be deduced from John Johnston's will and the circumstances surrounding him and his wife at the time he executed it. Many of those arguments are plausible and not a little ingenious but in our opinion they are not convincing. None of them is sufficiently persuasive to overcome the well-established canon of construction that a testator's intention is to be found first of all in the language which he has used to express it. *Rhode Island Hospital Trust Co.* v. *Otis,* 77 R. I. 296. Here the testator's language is plain and certain and it must be presumed that the words he has used convey their usual and ordinary meaning, especially since there is nothing elsewhere in the will to indicate that he has used them in a special limited sense. *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169.

In our opinion the term "personal legatees" is merely an antithetical expression which tends more pointedly to identify the individual legatees as opposed to the corporate legatees. For that reason only the individuals receiving legacies are designated by the testator as "personal legatees." That term has no special connotation otherwise differentiating it from the simple term "legatee." We cannot ignore the indisputable fact that Lilly H. Johnston was given a pecuniary legacy of $200,000 under the thirty-second clause and is therefore a "personal legatee" like every other individual who received a pecuniary legacy in the prior clauses. We therefore answer "Yes" to question 16 "b."

The third question in paragraph 16 is: "c. If the answer to the second question is 'Yes,' should said share be measured solely by the $200,000 general legacy under the thirty-second clause of the will or should the share be measured by including also the amounts given as tangible personal property under the thirty-second clause, the value of the

real estate devised under the thirty-second clause, the value of life estate in the residuary trust under the thirty-third clause or any of them?" The words "in proportion to the *amount* given such legatees and institutions" in the thirty-third clause indicate, in our opinion, that it was the intention of the testator that each pecuniary legacy given in the prior clauses should be the measure of the share of each personal legatee in the remaining two quarters of the trust estate. (italics ours)

On such view each share can be readily determined. Indeed any view which would include other property in addition to the amount of money given to Lilly H. Johnston under the thirty-second clause would make it extremely difficult to determine her share and from the testamentary language would not be within the reasonable contemplation of the testator. It seems clear to us that when he came to devise a formula for the distribution of the remaining two quarters of the trust estate among the personal legatees and institutions he was thinking in terms of the precise sum of money he had bequeathed to each legatee and that he used the word "amount" to denote such sum. Lilly H. Johnston's share should, therefore, be measured solely by her pecuniary legacy of $200,000.

The fourth question in paragraph 16 is: "d. In said distribution, should the shares of the Young Men's Christian Association of Pawtucket and Central Falls and the Memorial Hospital be measured solely by their respective legacies under the eighteenth and twentieth clauses or should there be included in such measurement the value of the amount given them as one-quarter shares of the residuary estate under the thirty-third clause of the will?" For the same reasons as above stated in determining Lilly H. Johnston's share, the share of each of those legatees must be measured by the pecuniary legacy of $20,000 given to each of them in the eighteenth and twentieth clauses respectively. In view of that answer it is unnecessary to answer the fifth question "e."

However, each of those legatees contends for a construction of that clause which is not referred to in any of the questions set out in the complainant's bill. In substance the contention is that the "remaining two quarters" was intended by the testator to be treated separately so that one quarter should be divided among the personal legatees and the other quarter among the charities and institutions. That is a rather novel contention and one to which the testamentary language is not readily susceptible. Indeed the proponents seem to recognize that fact, since in their briefs they suggest the interpolation of certain words in several places in the clause in order to show that such a division was intended. However, we must take the clause as we find it, and in our opinion it clearly provides for a division of the remaining two quarters not *between* two groups of legatees but *among* all of them, that is, the charities and institutions named as legatees and the personal legatees.

The next three questions in paragraph 16, which relate to allocation of income in the hands of the trustee, may be considered together and are as follows:

"f. What part, if any, of the dividend and interest income already collected on February 18, 1950 should be paid to the Rhode Island Hospital Trust Company, as executor of the will of Lilly H. Johnston?

"g. What part, if any, of the accrued interest on the bonds mentioned in Paragraph 15th should be paid to Rhode Island Hospital Trust Company, as executor of the will of Lilly H. Johnston?

"h. What part, if any, of the dividends from the stock mentioned in Paragraph 15th should be paid to the Rhode Island Hospital Trust Company, as executor of the will of Lilly H. Johnston?"

In the case of the instant will, it was apparently the clearly expressed intention of the testator that his wife was to have the net income from the trust estate paid to her "during the term of her natural life" and that he did not

intend that any of such income which was not paid to her should accrue to the benefit of her estate. Unpaid income therefore of whatever kind, regardless of any rule of apportionment adopted by any court or by statute, should in this instance be retained in the trust estate to be distributed in accordance with the direction in the thirty-third clause as herein interpreted. We refrain at this time from expressing any opinion on allocation or apportionment of various kinds of income from dividends, interest in general on bonds, or special modes of computing interest on United States savings bonds, as in our opinion the necessity for such instruction to the trustee does not exist under this will.

The ninth question in paragraph 16 is as follows: "i. Is the respondent, the Board of Management for Paisley and District Hospitals of Scotland, entitled to the legacy given to the Johnstone and District Cottage Hospital?" It has been argued that since the Johnstone and District Cottage Hospital has now been nationalized under the National Health Service Act of 1947 for Scotland and is under the Board of Management for Paisley and District Hospitals of Scotland it cannot validly take the gift under the thirty-third clause. Authority cited for that view is the recent case of *Pennsylvania Co. for Banking and Trusts, Etc.* v. *Board of Governors of London Hospital*, 79 R. I. 74, 83 A.2d 881. It has been pointed out, however, by counsel for Johnstone and District Nurses Association, another legatee also nationalized as aforesaid, that such case involved the National Health Service Act of 1946 for England, which differs in a number of respects from the act for Scotland.

Regardless of any such differences it is not necessary to consider whether that case is in point because it seems to us that there can be no question of the right of each of these legatees to take under the thirty-third clause. The gifts thereunder are not gifts with conditions attached but are absolute. Moreover, as we have hereinabove held, they vested on the death of the testator on October 21, 1942 long prior to the enactment of the National Health Service Act

for Scotland. Being vested at that time, each gift then became the property of the beneficiary and could be freely disposed of in any way. Only the enjoyment of the gift was postponed to await the decease of Lilly H. Johnston. That event having happened the legatee or its successor or assignee is clearly entitled to receive its property.

The complainant, however, suggests that public laws 1951, chapter 2744, might be a barrier to transmission of the gift. The pertinent portion of that act is as follows:

> "Clause B. Where it shall appear that a legatee or distributee resides outside of the United States or its territories and would not have the benefit or use or control of the money or other property due him, the probate court may direct that such money or other property be paid into the registry of the probate court for the benefit of such legatee or distributee or such person or persons as may thereafter appear to be entitled thereto. Such money or other property so paid into court shall be paid out only by the special order of the probate court or pursuant to the judgment of a court of competent jurisdiction."

We do not think that act applies here. It is our opinion that it was intended to apply solely to nations whose governments were totalitarian dictatorships and whose nationals were entitled to hold property only by consent of the government and therefore legacies and inheritances due them from abroad were subject to prior seizure by such governments. We are strongly disinclined to construe the National Health Service Acts passed by the Parliament of Great Britain to be in the same category as the laws or decrees of such dictatorships. If it was the intention of our legislature to so include them we would expect that such intention would be made clear beyond question. In the present instance we instruct the trustee that the Board of Management for Paisley and District Hospitals of Scotland is entitled to receive the legacy given to the Johnstone and District Cottage Hospital.

Apparently as to Johnstone and District Nurses Associa-

tion no specific question for our determination was set out in the bill. For that reason counsel argue that the question of its rights under the will are not before the court. They claim that where a specific question is not certified this court will not answer it. In support of that contention they cite *Probate Court of East Providence* v. *McCormick,* 56 R. I. 308. Counsel are in error. That case is not in point. The proceeding there was not a certification of a will for construction, as here, but was a certification of certain questions of doubt and importance under a different provision of the general laws.

On such a certification it is the specific question of law that is certified and not the cause. *United States Trust Co.* v. *Tax Assessors of Newport,* 47 R. I. 420. The reverse is true on certification for construction of a will where it is the cause which is certified and not specific questions. *Town of Bristol* v. *Nolan,* 72 R. I. 460. Therefore the question of the right of Johnstone and District Nurses Association to share in the distribution under the thirty-third clause is properly before us even though no question with reference thereto was specifically stated in the bill of complaint. However, although it is not an indispensable prerequisite, specific questions pointing up troublesome problems in a will are usually stated in a bill for construction and they are helpful in this court's consideration of such problems. Our answer to the right of the Johnstone and District Nurses Association to take under the thirty-third clause is the same as that given under the ninth question "i" relating to the legacy of the Johnstone and District Cottage Hospital.

The tenth question in paragraph 16 is: "j. Should the expenses of this proceeding be charged against the general assets of the trust under the thirty-third clause of the will or solely against the remaining two-fourths which are to be distributed under the terms of said thirty-third clause of the will?" Ordinarily under G. L. 1938, chap. 528, §22, where a bill in equity is brought for the construction of a

will, reasonable sums for counsel fees and expenses, to be taxed as costs, may be allowed to each of the parties defendant brought in by such bill and be paid out of the estate or fund concerning which the construction is asked. But it has been suggested here that possibly *Sackett* v. *Paine,* R. I., 128 Atl. 555, may lead to the view that in this instance such allowance should be made solely from the remaining two quarters of the fund, the proper distribution of which is the subject matter of the present bill of complaint.

We do not agree with this contention. In that case the court viewed the proceeding before it as in the nature of a bill of interpleader and not as one for the construction of a will. It also pointed out that the controversy between the claimants was not due to any uncertainty in regard to their rights arising from the provisions of the will but solely from independent legal proceedings that had been taken by one of the parties. In the instant case the controversy between the claimants and the complainant's doubt arising therefrom are not due to any outside circumstances but are intrinsic in the testator's own language in the will itself. In the circumstances we are of the opinion that the costs of this proceeding are properly chargeable against the general assets of the trust estate under the thirty-third clause of the will.

The parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Tillinghast, Collins & Tanner, William M. Sloan,* for complainant.

*Hinckley, Allen, Salisbury & Parsons, Matthew W. Goring, Crowe & Hetherington, Thomas Hetherington,* for executors under will of Lilly H. Johnston.

*Edwards & Angell, Kirk Smith, John V. Kean, James K. Edwards,* for certain respondents, John V. Kean, guardian *ad litem.*

*Woolley, Blais & Quinn,* for respondent Memorial Hospital.

*Swan, Keeney & Smith, H. Seymour Wiley, Francis B. Keeney, Jr.,* for certain respondents.

*William M. Mackenzie,* for respondents Young Women's Christian Association of Pawtucket and Central Falls, The Family Service Society of Pawtucket and Vicinity, Pawtucket Congregational Church, Industrial Trust Company as trustee under will of Earl H. Roberts; and Lucy M. Roberts.

*Walter V. Connly,* for respondent Pawtucket Boys' Club.

*Goodman, Oster & Gorin, Jeremiah J. Gorin,* for respondent Johnstone and District Nurses Association.

*William J. George,* for respondent Young Men's Christian Association of Pawtucket.